UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| VERASONICS, INC., a Washington corporation, | ) ) ) | Civil Action No. |
| Plaintiff, | ) ) | **COMPLAINT** |
| v. | ) ) | **JURY TRIAL REQUESTED** |
| ALPINION MEDICAL SYSTEMS CO., LTD, a Korean corporation | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Verasonics, Inc. ("Verasonics"), by and through its attorneys, alleges as follows for its Complaint against Defendant Alpinion Medical Systems Co., Ltd. ("Alpinion").

## I.       NATURE OF THIS ACTION

1.       This is an action to address Alpinion's misappropriation of Verasonics' trade secrets by misleading Verasonics into revealing valuable trade secrets which Alpinion then used to unfairly compete against Verasonics, and to enjoin and restrain Alpinion from further use of Verasonics' confidential information in breach of the parties' non-disclosure agreements.

## II.       PARTIES

2.       Verasonics is a corporation organized and existing under the laws of the state of Washington. Verasonics has its principal place of business in Kirkland, Washington.

COMPLAINT - 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

3.      On information and belief, Alpinion is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business in Seoul, Korea.

### III.      JURISDICTION AND VENUE

4.      This action arises under the Washington State Uniform Trade Secret Act (RCW §§ 19.108 *et seq.*) and Washington common law. The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between a citizen of Washington and a citizen of a foreign state, Korea, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      The Court has personal jurisdiction over Alpinion because Alpinion has purposefully directed its unlawful activities toward the Western District of Washington, and Verasonics' claims arise from those activities. Representatives of Alpinion traveled to this District for meetings and to negotiate possible business engagements with Verasonics, and during and/or in connection with those meetings solicited Verasonics to disclose valuable trade secrets. Finally, Alpinion has contractually agreed, according to its non-disclosure agreements with Verasonics, that any court situated in King County, Washington, including this Court, shall have personal jurisdiction over it.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of the action is situated in the Western District of Washington or, alternatively under § 1391(b)(3), because Alpinion is subject to the Court's personal jurisdiction.  In addition, venue in this District is proper because the parties agreed that venue in this District is proper under the parties' NDAs.

### IV.      FACTS

**A.      Verasonics Develops Cutting-Edge Ultrasound Technology**

7.      Verasonics is a privately held company founded in June 2001 that provides cutting edge ultrasound devices and technology to medical researchers for use in discovery of new therapeutic and diagnostic uses for ultrasound and for the development of ultrasound

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

systems for use in clinical applications.  Verasonics has developed pioneering research ultrasound systems that provide researchers and developers with the performance and flexibility required for medical innovation.

8.      Verasonics' research ultrasound systems have been used to develop a wide variety of new diagnostic and therapeutic applications for ultrasound technology, including high frame rate 2D (B-Mode), high frame blood flow, high intensity focused ultrasound (HIFU), functional Doppler (very sensitive blood flow), fast whole breast imaging, quantitative vector blood flow, automatic trans-cranial Doppler, renal denervation (reducing blood pressure by using imaging and HIFU), shear wave elastography SWE (tumor stiffness measurement used as an indication of cancer), single angle quantitative blood flow, photo acoustics, enhanced drug delivery, high frequency imaging and many others.  Verasonics' systems can also used in non-medical applications such as non-destructive testing.

9.      Verasonics pioneered technology that enables software-based ultrasound imaging to be performed at far greater speeds, sensitivity and resolution than its competitors. Verasonics announced some of the new capabilities of its technology at the 2007 IEEE IUS meeting in New York, which industry leaders hailed as a major breakthrough in the industry. Verasonics has become a recognized leader in the research ultrasound market and also has licensed its technology and intellectual property to companies that make and sell commercial ultrasound products.

10.     Verasonics' co-founders are Chief Executive Officer Lauren Pflugrath and Vice President and Chief Technology Officer Ron Daigle, Ph.D. Mr. Pflugrath has 26 years of experience in ultrasound technology management and is an inventor on 18 United States patents directed to ultrasound technology.  Dr. Daigle has 36 years of experience in ultrasound research and development, has authored 32 publications on ultrasound technology and is an inventor on 13 United States ultrasound patents.

COMPLAINT - 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

**B.**     **Verasonics Enters Two Key Markets: Research and Clinical**

11.     Since its formation, Verasonics has developed a business that generally targets two key markets: research and clinical.

12.     The research ultrasound market includes laboratories, universities and other entities that use ultrasound equipment for testing, research and/or commercial product development testing and analysis for both medical and non-medical applications.  Verasonics also markets its products to start-ups and other companies conducting research and development into new ultrasound technologies and applications.

13.     The clinical ultrasound market is focused on hospitals, clinics, doctors' offices, and other healthcare providers that use ultrasound devices for diagnosis and treatment of patients and providing other consumer-facing healthcare.

14.     Verasonics markets and licenses its technology, hardware and software components separately to these two markets.  Verasonics leases its research ultrasound systems to companies developing clinical ultrasound products.  It does not currently sell or lease its systems to clinical markets, but instead licenses its technology for use in clinical applications.

15.     Verasonics is a leader in the research market, which involves the use of particularly advanced ultrasound devices with unique features and technology that make them especially suitable for research purposes.  Verasonics' ultrasound systems—including its V-1 and Vantage systems—employ proprietary software and hardware, and provide state-of-the-art capabilities and enhanced customization options that make them particularly valuable as research tools.

16.     To protect the secrecy of its confidential information, Verasonics requires employees, consultants and third parties who have access to its confidential information and trade secrets to enter into non-disclosure agreements and otherwise follows industry best practices in securing its confidential information.

COMPLAINT - 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

**C.      Verasonics and Alpinion Enter into a Non-Disclosure Agreement**

17.      Alpinion is a Korean company that to date, on information and belief, has not made significant inroads into either the United States or worldwide ultrasound market.

18.      On information and belief, Alpinion predecessor VIMED Medical Systems Co., Ltd. ("VIMED") was acquired in 2008 by publicly-traded ILJIN Holdings Co. Ltd., itself an affiliate of the large Korean conglomerate ILJIN Group.  On information and belief, VIMED was renamed Alpinion Medical Systems Co., Ltd. in or about June 2010.  "Alpinion" as used in this Complaint includes VIMED.

19.      In or about March 2010, Alpinion informed Verasonics that it was interested in licensing Verasonics' technology.

20.      Alpinion also informed Verasonics that it was interested in entering into a business relationship that would permit it to collaborate with Verasonics and utilize Verasonics' research ultrasound system and technology to develop commercial ultrasound devices for the clinical market, i.e., selling and leasing ultrasound systems to healthcare providers.

21.      Verasonics and Alpinion entered into a Mutual Non-Disclosure Agreement (the "NDA") on May 19, 2010. A true and correct copy of the NDA is attached as Exhibit A to this Complaint.

22.      The NDA states that the term "'Confidential Information' is to be construed broadly," and recites a long, non-exhaustive list of confidential information, including "specifications, product designs, nonpublic . . . pending patent applications, business and marketing plans, patent and other intellectual property strategies, competitive analysis, research, data and other recorded information, apparatus, markets and customer information, designs, devices, discoveries, . . .  know-how, materials and documents, finances, procedures and products, software (including interfaces, object code, source code, firmware and any and

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

all enhancements, related documentation, releases, revision and updates thereto) . . .

specifications, . . . [and] inventions." Ex. A, ¶ 1(A).

23. In the NDA, the parties agreed that "[e]ach party possesses and will continue to possess and develop Confidential Information relating to its business, and such Confidential Information has important commercial value to such party. A party's Confidential Information . . . [is] the sole property of such party . . . ." Ex. A, ¶ 2(A).

24. Verasonics and Alpinion agreed in the NDA "to keep in confidence and trust all Confidential Information of" the other, and agreed that "any and all Confidential Information of a Disclosing Party that is disclosed to the Receiving Party shall be used by the Receiving Party *only for purposes of discussing a potential business relationship*." Ex. A, ¶ 2(A) (emphasis added).

25. The NDA also provides that Confidential Information "may be disclosed by the Receiving Party only to its employees, agents, advisors and representatives *who need such information for the purpose of carrying out the above stated purpose*," (i.e. "for purposes of discussing a potential business relationship between the parties"). Ex. A, ¶ 2(C) (emphasis added). Further, "any such employee, agent, advisor or representative, shall have executed a written agreement confirming that such person or entity shall comply with the nondisclosure agreements set forth in this Agreement and be bound by the terms and conditions of this Agreement." Ex. A, ¶ 2(C).

26. The NDA "does not grant Receiving Party any license or any other rights with respect to the Disclosing Party's proprietary rights or Confidential Information." Ex. A, ¶ 5.

27. According to the terms of the NDA, the parties' duties of confidentiality survive termination of the agreement: "the confidentiality obligations of the Receiving Party hereunder shall survive termination of this Agreement." Ex. A, ¶ 3.

28. In the NDA, the Receiving Party agreed that any breach by it will cause irreparable injury and that although claims arising out of the agreement are subject to

COMPLAINT - 6

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

arbitration, the Disclosing Party may obtain injunctive or other equitable relief in courts in this District for any such breach:

> A Receiving Party that breaches this Agreement acknowledges and agrees that any breach of this Agreement will cause irreparable injury to the nonbreaching party, which injury cannot be adequately compensated by monetary damages. Therefore, in the event of any such breach, the nonbreaching party may obtain without the posting of bond . . . an order for preliminary injunction or other equitable order from the . . . court . . . and any such order may be filed with any court of competent jurisdiction over the breaching party.

Ex. A, ¶ 4(B).

29.     As part of the NDA, the parties submitted to the Court's personal jurisdiction and agreed that venue was proper: "[e]ach party further agrees that any state or federal court situated in Seattle, King County, Washington has and shall have personal jurisdiction over it . . . and that venue in any such court is [the] proper venue for enforcement of this Agreement . . . ." Ex. A, ¶ 4(B).

**D.      Alpinion Enters Into Lease Agreement for Two Verasonics Devices**

30.     On August 23, 2010, Verasonics and Alpinion entered into a Lease and Non-Exclusive License Agreement ("Lease"), whereby, *inter alia*, Verasonics leased two V-1 research ultrasound systems to Alpinion.

31.     The terms of the Lease supplemented but did not supersede the NDA. The Lease granted Alpinion "a non-exclusive right to use" the V-1 system and other Verasonics' intellectual property but only so long as they were used "solely for research and development purposes for experimentation or for potential commercial products," "but not for use with any commercial products without a separate written agreement with mutually

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

acceptable terms and conditions".  No such further agreement has been entered into between Alpinion and Verasonics.

32.     Under the Lease, Alpinion agreed to use Verasonics' devices, technology and confidential information solely for research and development, and agreed not to use them for any other purpose.  In addition, Alpinion agreed not to reverse engineer Verasonics' technology.  The Lease defined Confidential Information to include Verasonics' ultrasound devices themselves.

33.     During discussions and negotiations leading up to the Lease, Alpinion repeatedly represented to Verasonics that it wanted to use Verasonics' research ultrasound devices and technology to develop ultrasound devices for the clinical market.  Alpinion did not disclose to Verasonics that it wanted to use Verasonics' ultrasound devices, technology or confidential information to develop a competing research ultrasound device or that it intended to compete against Verasonics in the research market using Verasonics' confidential information.

**E.     The Relationship Evolves: Alpinion Professes Interest in Licensing, Co-Development and/or Merger**

34.     On January 4, 2011, Alpinion's Chief Executive Officer, Seokbin Ko, sent Mr. Pflugrath an email stating that "[Alpinion is] exploring your system" and that it wanted to initiate an engineering project by licensing some of Verasonics' technology.

35.     Mr. Ko also expressed "sincere interest of investing your company. It would be highly appreciated if you consider this idea & develop further discussion."

36.     Mr. Pflugrath's response was positive, as a partnership or business arrangement—whether through licensing, co-development or investment—had the potential to be beneficial to Verasonics.

37.     After discussions about a partnership progressed throughout the first half of 2011, Alpinion presented Verasonics with a PowerPoint concerning a potential collaboration in

COMPLAINT - 8

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

the clinical market.  Alpinion reiterated that it was interested in developing ultrasound equipment for the clinical market based on Verasonics' technology, and that it was not interested in the research market.

**F.      Alpinion Induces Verasonics to Share Trade Secret Information by Feigning Interest in a Possible Investment or Partnership**

38.      Continuing to profess an interest in investing in Verasonics and to be impressed by Verasonics' technology, Alpinion sent a "Preliminary Business Review Questionnaire" to Verasonics on or about August 1, 2011.  In the questionnaire, Alpinion asked Verasonics to disclose extensive confidential information about Verasonics' business operations, business and marketing plans, financials and strategies.

39.      On or about September 28, 2011, Verasonics provided a response to Alpinion's Preliminary Business Review Questionnaire (the "Business Review").

40.      The Business Review contained a host of Verasonics' confidential information prominently marked "Verasonics Confidential," including:

    a.      actual figures and projections for revenue, profits, costs, margins, revenue growth, sales volume—all by business segment and year, from 2011 through 2017;

    b.      business and marketing plans for expanding into specific, high-growth markets, along with internal projections regarding the potential within each market and strategies as to how to take advantage of them;

    c.      product development plans, including specifics as to their significance, business impact, and expected technical capabilities; and

    d.      current and future research and development plans, including a description of Verasonics' initiatives and their annual budgets.

41.      After requesting and then being provided with significant confidential information regarding Verasonics' business and competitively sensitive details of its business

COMPLAINT - 9

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

operations and future plans, Alpinion did not make a serious overture toward a further business relationship. Instead, Alpinion continued to lull Verasonics into revealing even more trade secrets.

**G.      Alpinion Continues to Lure Verasonics Into Revealing Trade Secrets**

42.      In November of 2012, encouraged by Alpinion's continued expressions of interest in Verasonics' technology and in investing in Verasonics, Mr. Pflugrath and Verasonics' Chief Financial Officer Ed McClenny met with Alpinion representatives in Seoul, Korea.

43.      The parties executed a second NDA with the same terms as the first on November 15, 2012 (attached as Exhibit B hereto) and executed an addendum to these agreements on July 14, 2014 (attached as Exhibit C hereto) that extended the term of the NDA through December 31, 2019.  The two NDAs and addendum are collectively referred to herein as "the NDAs."

44.      As part of its due diligence process for a potential investment and other business arrangements with Verasonics, Alpinion retained a consultant—Ki-Jong Lee—to conduct due diligence on its behalf into Verasonics' pending patent applications and patents.  As part of this process and at Alpinion's request, Dr. Daigle met with Mr. Lee in or about December 2012 and disclosed, *inter alia*, confidential information regarding Verasonics' pending patent applications and patent strategies.

45.      On December 24, 2012, Alpinion Chief Financial Officer Youngcheol Hwang sent a Memorandum of Understanding to Verasonics purporting to express an interest in purchasing shares of Verasonics in return for, among other things, certain licenses to use Verasonics' devices and technology.

46.      Throughout the first quarter of 2013, Verasonics and Alpinion had a series of telephone and in-person meetings that were ostensibly for the purpose of discussing a potential merger or investment.

COMPLAINT - 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

47.     Throughout this time period, Alpinion repeatedly expressed an interest in collaborating with Verasonics and utilizing Verasonics' technology in the clinical market.  It did not inform Verasonics that it intended to use Verasonics' confidential information to compete against it in the research market.

48.     In February 2013, Verasonics provided Alpinion access to a password-protected Data Room that contained files disclosing additional Verasonics' confidential information. The Data Room included additional and updated information regarding Verasonics' actual and projected revenue, profit, and market performance, as well as business plans and product development plans.

49.     The Data Room also contained Verasonics' confidential Financial Model, which contained detailed breakdowns of Verasonics' operating expenses, royalty income and projections through 2015, as well as the licensing fee amounts charged by Verasonics and the resulting revenue.

50.     The Data Room also contained a "Technology Overview" that contained confidential information regarding Verasonics' technology. This included a comprehensive, quarter-by-quarter product roadmap that detailed the company's highly sensitive plans for various product and product capability rollouts for 2013 and 2014.

51.     On information and belief, from late February through March 2013, individuals acting on Alpinion's behalf had access to and viewed the documents in the Data Room as part of its purported due diligence process for a potential investment and further business arrangement with Verasonics.

**H.     Alpinion Reveals That It Never Had any Interest in a Deal with Verasonics By Making an Offer That Was Well Below Market**

52.     On or about March 27, 2013, Alpinion sent Verasonics an investment proposal.

53.     The investment proposal was substantially below market and had a variety of terms and conditions that reflected a lack of genuine interest on Alpinion's behalf in entering

COMPLAINT - 11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

into an agreement with Verasonics.  On information and belief, unbeknownst to Verasonics, Alpinion had feigned interest in a potential business arrangement with Verasonics to gain valuable and detailed confidential information about Verasonics' business, technology and intellectual property to unfairly compete with it, including in the research market.

54.     On or about April 12, 2013, Verasonics rejected Alpinion's below-market offer.

**I.     Alpinion Continues to Represent That It Was Not Interested in Entering the Research Market**

55.     For the rest of 2013 and the first part of 2014, the two companies remained in contact, with at least one conversation regarding the opportunity for Alpinion to license Verasonics' technology.

56.     On June 17, 2014, McClenny, Pflugrath and Daigle met with Alpinion representatives WonHo Noh, Mr. Ko and KeonHo Son, in Seoul, at the InterContinental Grand Seoul Parnas hotel.

57.     During the meeting—and consistent with its prior statements—Alpinion again represented that it was interested in developing commercial clinical ultrasound products, not a research ultrasound device.

**J.     Alpinion Announces the eCube-12R Ultrasound Platform, Which is Specifically Designed for the Research Market**

58.     Only a few weeks after again representing that it was not interested in developing products for the research market, Alpinion announced the eCube-12R ultrasound platform, which is specifically designed for the research market.

59.     On information and belief, the eCube-12R platform's specifications purport to be identical in many respects to the specifications of Verasonics' devices designed for the research market.

60.     On information and belief, Alpinion developed the eCube-12R platform and its eCube research ultrasound devices while it amassed what it knew to be Verasonics' confidential information provided under the auspices of the parties' NDAs and with the express

COMPLAINT - 12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

and implied understanding that it would be kept strictly confidential and used only for limited purposes, all the while repeatedly representing to Verasonics that it was not interested in the research market.

61.     On information and belief, Alpinion used Verasonics' confidential information, including as to revenue, revenue growth, profits, costs, margins, and sales volumes, as well as Verasonics' devices, business and marketing plans, product development plans, product and user manuals, current and future research and development plans, as well as plans and strategies regarding pending patent applications, in deciding to enter into the research ultrasound market, and in developing, marketing and selling its ultrasound products, including products based on the eCube-12R platform.

## COUNT I

**VIOLATION OF THE WASHINGTON STATE UNIFORM TRADE SECRET ACT**

62.     Verasonics incorporates the allegations in Paragraphs 1-61 as if fully set forth herein.

63.     Verasonics' confidential information, including as to revenue, revenue growth, profits, costs, margins, and sales volumes, as well as Verasonics' business and marketing plans, product development plans, pending patent applications and intellectual property strategies, and current and future research and development plans are trade secrets because they (1) derive actual and potential economic value from not being generally known to, or readily ascertainable by proper means by, persons who can obtain economic value from their disclosure or use and (2) were the subject of reasonable efforts under the circumstances to maintain their secrecy.

64.     Defendant's acquisition and use of Verasonics' trade secrets as described above constitutes trade secret misappropriation as prohibited by the Washington State Uniform Trade Secret Act (RCW §§ 19.108 *et seq*.) because Defendant (1) used improper means to acquire the trade secrets and (2) used, without consent, Verasonics' trade secrets that were acquired by

COMPLAINT - 13

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

improper means and/or used, without consent, Verasonics' trade secrets despite a duty to maintain their secrecy and limit their use.

65.     Defendant's unauthorized use of Verasonics' confidential information as described above is causing and will continue to cause irreparable harm to Verasonics, for which Verasonics has no adequate remedy at law unless Defendant's acts are restrained by this Court.

66.     Verasonics is entitled to preliminary and permanent injunctive relief against Defendant and its officers, agents, servants, employees, and attorneys and all other persons in active concert or participation with any of them against the direct or indirect disclosure, misappropriation, practice or use of its trade secrets, including the marketing, sale and further development of products based on the eCube-12R platform.

67.     In addition, Defendant's actions as described above are willful and malicious and, as a result, Verasonics is entitled to its attorneys' fees pursuant to RCW § 19.108.040 and for punitive damages pursuant to RCW § 19.108.030.

## COUNT II

### BREACH OF NON-DISCLOSURE AGREEMENTS

68.     Verasonics incorporates the allegations stated by Paragraphs 1-67 as if fully set forth herein.

69.     The NDAs are valid contracts that, among other things, prohibit Alpinion from using Verasonics' Confidential Information for any purpose other than for discussing a potential business relationship between Alpinion and Verasonics.

70.     Defendant's use of Verasonics' Confidential Information as described above threatens to breach, has breached, and continues to breach the NDAs.

71.     All conditions precedent and obligations required to be performed by Verasonics prior to Defendant's breach were performed by Verasonics.

72.     Alpinion's breaches have harmed Verasonics, and Verasonics will continue to suffer irreparable harm if Alpinion is allowed to breach and/or continue to breach the NDAs.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

73.     Under the NDAs, Verasonics may seek injunctive relief and any other equitable relief from the Court.

## COUNT III

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

74.     Verasonics incorporates the allegations stated by Paragraphs 1-73 as if fully set forth herein.

75.     The implied covenant of good faith and fair dealing required that Alpinion not misrepresent its interest in a business relationship with Verasonics to extract Verasonics' confidential information and use it to compete against Verasonics.

76.     Alpinion breached the implied covenant of good faith and fair dealing by misrepresenting its interest in a business arrangement with Verasonics to gain access to Verasonics' confidential information to unfairly compete against Verasonics and by using Verasonics' confidential information to develop and market products based on the eCube-12R platform.

77.     Alpinion's breaches have harmed Verasonics, and Verasonics will continue to suffer irreparable harm if Alpinion is allowed to breach and/or continue to breach the covenant of good faith and fair dealing.

## COUNT IV

### BREACH OF IMPLIED CONTRACT

78.     Verasonics incorporates the allegations stated by Paragraphs 1-77 as if fully set forth herein.

79.     If it is found that there is no express contract, Verasonics and Alpinion mutually assented to an implied contract that both parties would perform their respective confidentiality obligations, and that Alpinion would use Verasonics' confidential information solely for the purpose of discussing a potential business relationship with Verasonics.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

80.     Alpinion's use of Verasonics' confidential information as described above threatens to breach, has breached, and continues to breach the parties' implied contract.

81.     Alpinion's breaches have harmed Verasonics, and Verasonics will continue to suffer harm if Alpinion is allowed to breach and/or continue to breach the parties' implied contract.

**PRAYER FOR RELIEF**

Wherefore, Verasonics respectfully requests the following alternative and cumulative relief:

82.     For violation of the Washington State Uniform Trade Secret Act under Count I, judgment against Defendant for all actual damages suffered by Verasonics as a result of Defendant misappropriating Verasonics' trade secrets, together with any profits or other unjust enrichment gained by Defendant arising from such acts;

83.     For violation of the Washington State Uniform Trade Secret Act under Count I, Defendant and its officers, agents, servants, employees, and attorneys and all other persons in active concert or participation with any of them, be enjoined and restrained from using or otherwise profiting from any trade secrets misappropriated from Verasonics, including by being enjoined and restrained from marketing, selling or further developing products based on the eCube-12R platform;

84.     For violation of the Washington State Uniform Trade Secret Act under Count I, judgment against Defendant for punitive damages for twice the sum of the actual loss suffered by Verasonics plus any amount recovered for unjust enrichment;

85.     For breach of the NDAs under Count II, judgment that Alpinion and its officers, agents, servants, employees, and attorneys and all other persons in active concert or participation with any of them, be enjoined and restrained during the pendency of this action and permanently thereafter from using or otherwise profiting from any confidential information

COMPLAINT - 16

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

obtained from Verasonics, including by being enjoined and restrained from marketing, selling or further developing products based on the eCube-12R platform;

86.     For breach of the covenant of good faith and fair dealing under Count III, judgment that Defendant and its officers, agents, servants, employees, and attorneys and all other persons in active concert or participation with any of them, be enjoined and restrained during the pendency of this action and permanently thereafter from using or otherwise profiting from the use of Verasonics' confidential information including by being enjoined and restrained from marketing, selling or further developing products based on the eCube-12R platform;

87.     For breach of implied contract under Count IV, judgment that Defendant and its officers, agents, servants, employees, and attorneys and all other persons in active concert or participation with any of them, be enjoined and restrained during the pendency of this action and permanently thereafter from using or otherwise profiting from the use of Verasonics' confidential information including by being enjoined and restrained from marketing, selling or further developing products based on the eCube-12R platform;

88.     For breach of implied contract under Count IV, damages in an amount to be determined by the Court;

89.     That Defendant be ordered to pay Verasonics' reasonable costs, including attorneys' fees;

90.     Defendant be ordered to pay Verasonics' prejudgment interest on all sums awarded as allowed by law; and

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

91.     Such other relief as this Court may deem just and proper.

**V.     JURY TRIAL DEMAND**

Verasonics hereby demands a trial by jury of all issues so triable.

Dated: November 26, 2014                    Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By _s/ Jonathan M. Lloyd_
        Jonathan M. Lloyd, WSBA #37413

By _s/ Conner G. Peretti_
        Conner G. Peretti, WSBA #46575

1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
Telephone:  (206) 622-3150
Fax:  (206) 757-7700
E-mail:  jonathanlloyd@dwt.com
E-mail:  connerperetti@dwt.com

Eric S. Walters *(Pro Hac Vice Application to be filed)*
Erica D. Wilson *(Pro Hac Vice Application to be filed)*
505 Montgomery Street, Suite 800
San Francisco, CA  94111-6533
Telephone:  (415) 276-6500
Fax:  (415) 276-6599
E-mail:  ericwalters@dwt.com
E-mail:  ericawilson@dwt.com

Attorneys for Plaintiff
VERASONICS, INC.

COMPLAINT - 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# Exhibit A

## MUTUAL NON-DISCLOSURE AGREEMENT

This Mutual Non-Disclosure Agreement ("Agreement") is made effective the last date of signature below ("Effective Date") by and between

**VERASONICS, INC.** ("VERASONICS"), a Washington corporation with its principal offices located at 22222 NE 62nd Pl., Redmond, WA 98053, and

**VIMED SYSTEMS** ("COMPANY"), Korean company with its principal offices located at 6FL, Verdi Tower 222-22, Guro-Dong, Guro-Gu, Seoul, 152-848 Korea.

Each of VERASONICS and COMPANY is sometimes referred to herein as a "party," and together they are sometimes referred to herein as the "parties."

### Background

A. VERASONICS engages in research and development, inventing, creating, authoring, management, consulting, and licensing that relates to diagnostic ultrasound devices and programs containing or using copyrights, confidential information, and other intellectual property and industrial property rights belonging to VERASONICS.

B. COMPANY is a Diagnostic and Therapeutic Medical Ultrasound company.

C. VERASONICS and COMPANY wish to explore a possible business relationship and are willing to enter into this Agreement in order to exchange Confidential Information, as further described below, on the terms and conditions set forth herein. The party disclosing its own Confidential Information is sometimes referred to herein as the "Disclosing Party," and the party receiving the Disclosing Party's Confidential Information is sometimes referred to herein as the "Receiving Party."

D. This Agreement does not require any party to enter into a business relationship that is not mutually acceptable to all parties.

NOW, THEREFORE, in consideration of the terms and conditions stated herein and for other good and valuable consideration, the adequacy of which is acknowledged and agreed by the parties,

### It is Agreed

1. Definitions.

A. The Disclosing Party's "Confidential Information" is to be construed broadly and includes, but is not limited to, all of the following tangible and intangible assets of the Disclosing Party to the extent that such Confidential Information shall be properly marked as "Confidential" or "Proprietary" : specifications, product designs, nonpublic provisional patent filings and pending patent applications, business and marketing plans, patent and other intellectual property strategies, competitive analysis, research, data and other recorded information, apparatus, markets and customer information, designs, devices, discoveries, drawings, inventions (whether patentable, copyrightable, or otherwise subject of intellectual property protection, and whether or not reduced to practice), know-how, materials and documents, finances, procedures and products, software (including interfaces, object code, source code, firmware and any and all enhancements, related documentation, releases, revisions, and updates thereto), sources of supply, specifications, techniques, texts, trade secrets, specifications, and the like, all whether in preliminary or final form and in and on any media whatsoever, that are created, conceived, reduced to practice, developed, discovered, invented or made, whether before or during the term of this Agreement which are related to the subjects of this Agreement.

- 1 -



The term "Confidential Information" shall not apply to: (i) information that is already in the possession of the Receiving Party without obligation of confidence; (ii) information which is in the public domain; (iii) information which reasonable proof can establish was in the nondisclosing party's possession prior to the time of disclosure by the other party and was not acquired, directly or indirectly, from the other party; (iv) information which the nondisclosing party receives from a third party on a nonconfidential basis; (v) developments by the nondisclosing party subsequent, to and independent of, the receipt of Confidential Information from the other party and without any use of such Confidential Information of the other party; and (v) information that is ordered to be disclosed by a court of competent jurisdiction, after notice to the party having such information, to be disclosed subject however to any protective terms and conditions that may be contained in any such order.

B. The Disclosing Party's "Invention" as used herein is to be construed broadly and includes, but is not limited to, concepts, discoveries and ideas, whether patentable or not, including but not limited to computerized business methods, programs, methods, applications, designs, formulas, machines, methods, processes, product ideas or designs, and techniques, as well as improvements thereof or know-how related thereto, relating to any present or prospective business of the Disclosing Party.

2.  Nondisclosure Agreements and Ownership of Confidential Information.

A.  Each party possesses and will continue to possess and develop Confidential Information relating to its business, and such Confidential Information has important commercial value to such party. A party's Confidential Information, and any and all patents, copyrights and other rights related thereto, are the sole property of such party and/or its assigns. Any and all Confidential Information of a Disclosing Party that is disclosed to the Receiving Party shall be used by the Receiving Party only for purposes of discussing a potential business relationship between the parties. Each Receiving Party agrees (1) to keep in confidence and trust all Confidential Information of the Disclosing Party and (2) further agrees neither to use nor to disclose any Confidential Information of the Disclosing Party for any other purpose whatsoever without the prior written consent of the Disclosing Party. With respect to any and all Confidential Information disclosed by either party on terms of confidentiality prior to its respective execution of this Agreement, all such Confidential Information shall be subject to the terms of this Agreement.

B.  All "Physical Property" (apparatus, documents, equipment, records, and any and all other physical property, whether or not pertaining to Confidential Information) furnished by the Disclosing Party to a Receiving Party and any copies, derivatives, or other materials containing any such Confidential Information made by the Receiving Party shall be and remain the sole property of the Disclosing Party. A Receiving Party agrees to return forthwith to the Disclosing Party all Confidential Information and Physical Property owned by the Disclosing Party immediately upon (1) any request by the Disclosing Party or (2) the termination of this Agreement between the parties. A Receiving Party agrees not to take or retain any Confidential Information or Physical Property of the Disclosing Party, or any copies or reproduction thereof (whether print, electronic, digital, electro-magnetic, or in any other format, means or medium), except as may be expressly permitted in writing by the Disclosing Party after any request by the Disclosing Party to return its Confidential Information or Physical Property. Notwithstanding the foregoing, a Receiving Party may keep one set of copies of Physical Property subject to this Agreement for legal archival purposes only.

C.  Confidential information furnished by a Disclosing Party may be disclosed by the Receiving Party only to its employees, agents, advisors and representatives who need such information for the purpose of carrying out the above stated purpose; provided, however that any such employee, agent, advisor or representative, shall have executed a written agreement confirming that such person or entity shall comply with the nondisclosure agreements set forth in this Agreement and be bound by the terms and conditions of this Agreement.



D. Nothing in this Agreement shall constitute any assignment, conveyance, license, or other transfer of any right, title or interest in any of a Disclosing Party's Confidential Information, including any and all intellectual property rights, to the Receiving Party.

3. Term.

This Agreement shall be effective for one (1) year from the Effective Date and the confidentiality obligations of the Receiving Party hereunder shall survive termination of this Agreement.

4. Arbitration and Governing Law.

A. AAA Arbitration and Governing Law. Subject to section 4.B below, all claims, demands, disputes, controversies, differences or misunderstandings between the parties hereto arising out of or by virtue of this Agreement shall be submitted to and determined by arbitration. Such arbitration will be held in Seattle, King County, Washington, U.S.A and shall be conducted in accord with the commercial arbitration rules of the American Arbitration Association ("AAA"). The law applied will be the law of the State of Washington without reference to conflicts of laws provisions. There shall only be one arbitrator appointed pursuant to the rules of the AAA. The decision of the arbitrator shall be binding upon the parties and shall be final and nonappealable. The award of the arbitrator shall be made in writing, shall be binding and conclusive on all parties, and shall include a finding for the payment of the costs of such arbitration. A nonappealable judgment of a court of competent jurisdiction may be entered upon the award of the arbitrator.

B. Enforcement of this Agreement. A Receiving Party that breaches this Agreement acknowledges and agrees that any breach of this Agreement will cause irreparable injury to the nonbreaching party, which injury cannot be adequately compensated by monetary damages. Therefore, in the event of any such breach, the nonbreaching party may obtain without the posting of bond an order for interim relief, including without limitation, a temporary restraining order or other immediate order of immediate equitable or injunctive relief and an order for preliminary injunction or other equitable order from the arbitrator or a court, at the option of the nonbreaching party, and any such order may be filed with any court of competent jurisdiction over the breaching party. Each party further agrees that any state or federal court situated in Seattle, King County, Washington has and shall have personal jurisdiction over it and proper subject matter jurisdiction, and that venue in any such court is proper venue for enforcement of this Agreement or any award or other order issued by the arbitrator. Furthermore, the parties agree that these arbitration terms are subject to the New York Convention and are enforceable in any country that is a signatory to the New York Convention.

C. Attorney Fees and Costs. The prevailing party in any arbitration or related legal action arising from this Agreement shall be entitled to recover all of its reasonable costs, including without limitation attorney's fees and costs and arbitrator fees.

5. Limited Effect.

This Agreement does not create any obligation on the parties to enter into a business relationship with each other. This Agreement does not create any obligation on the parties to refrain from entering into a business relationship with any third party. This Agreement does not grant Receiving Party any license or any other rights with respect to the Disclosing Party's proprietary rights or Confidential Information. Neither party shall have the right, power or implied authority to create any obligation or duty, express or implied, on behalf of the other party. Neither party makes any representation with respect to (a) whether the use of any Confidential Information infringes the intellectual property rights of any third parties; or (b) the accuracy or completeness of the Confidential Information.



6. Miscellaneous.

A. Governing law. This Agreement shall be interpreted under the laws of the State of Washington, notwithstanding the application of any jurisdiction's choice-of-law rules to the contrary. The parties consent to jurisdiction and venue in the state and federal courts sitting in the State of Washington.

A. Binding Effect. This Agreement shall be binding upon each party and its parents, subsidiaries, and affiliates, successors and assigns, and, if applicable, to personal representative, heirs, and estate, and shall inure to the benefit of the other party and its parents, subsidiaries, and affiliates, successors and assigns, and, if applicable, to personal representative, heirs, and estate.

B. Independent Contractors. Each party is an independent contractor to the other party. This Agreement shall not make either party a partner, agent, or joint venturer of the other party. No party shall be deemed to assume and does not assume any liability or obligation of the other party, except as may be expressly stated in this Agreement.

C. Entire Agreement. This Agreement, including all attachments, constitutes the parties' entire agreement with respect to the subject matter hereof, and supersedes and merges all prior and contemporaneous communications, regarding its specific subject matter. It may not be modified except by subsequent written agreement signed by authorized representatives of both parties.

D. No Collateral Promises. It is understood and agreed that none of the parties or any other representative of the parties has made any promise, representation or warranty whatsoever not contained or referred to herein to induce the signing of this Agreement, and the parties further acknowledge that none of them have signed this agreement in reliance upon any promise, representation or warranty not contained or referred to in this Agreement.

E. Severability: Savings. If any one or more provisions of this Agreement shall be held by any court to be invalid or unenforceable because excessively broad as to scope, duration, activity or subject, such invalidity or unenforceability shall not adversely affect the validity or enforceability of any other part of this Agreement.

F. Construction. This Agreement shall not be construed for or against any party, regardless of its drafter.

G. Notices. All notices under this Agreement shall be deemed given if delivered personally, by registered or certified mail or by other provable means, or by facsimile transmission with confirmation of receipt by telephone, to the parties at the addresses described with the signatures below.

H No Waiver. No waiver of any provision of this Agreement, nor delay in enforcing any rights hereunder, shall be construed as a continuing waiver or create an expectation of non-enforcement of that or any other provision or right.

I. Force Majeure. Time periods for either party's performance under any provisions of this Agreement shall be extended for periods of time during which the party's performance is prevented due to circumstances beyond such party's control, including without limitation, fires, floods, earthquakes, lockouts, strikes, embargoes, governmental regulations, acts of God, acts of terrorism, war or other strife.

J. Headings. Headings in this Agreement are for convenience only and shall not be used to interpret or construe the provisions.

K. Authority. The parties each represent and warrant that such party has full power and actual authority to enter into this Agreement and to carry out all actions required of them by it. Each person signing this

- 4 -

Agreement in a representative capacity represents and warrants that he or she has full power and authority to bind the party on whose behalf he or she signs.

1. Counterparts; Facsimile Signatures. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A facsimile copy of an original signature shall be deemed an original signature.

## AGREED:

**COMPANY**

Signature

Date    5/19/2010

Name: Seokbin Ko
Title: President and CEO

Address:

6FL, Verdi Tower 222-22

Guro-Dong, Guro-Gu,
Seoul, 152-848, Korea/.

**VERASONICS, INC.**

Signature

Date    5/19/2010

Name: Lauren Pflugrath
Title: President and CEO

Address:

22222 NE 62nd Pl.
Redmond, WA 98053

# Exhibit B

## MUTUAL NON-DISCLOSURE AGREEMENT

This Mutual Non-Disclosure Agreement ("Agreement") is made effective the last date of signature below ("Effective Date") by and between

> **VERASONICS, INC.** ("VERASONICS"), a Washington corporation with its principal offices located at 22222 NE 62nd Pl., Redmond, WA 98053, and

> **ALPINION MEDICAL SYSTEMS, formerly known as VIMED SYSTEMS** ("COMPANY"), Korean company with its principal offices located at 6FL, Verdi Tower 222-22, Guro-Dong, Guro-Gu, Seoul, 152-848 Korea.

Each of VERASONICS and COMPANY is sometimes referred to herein as a "party," and together they are sometimes referred to herein as the "parties."

### Background

A. VERASONICS engages in research and development, inventing, creating, authoring, management, consulting, and licensing that relates to diagnostic ultrasound devices and programs containing or using copyrights, confidential information, and other intellectual property and industrial property rights belonging to VERASONICS.

B. COMPANY is a Diagnostic and Therapeutic Medical Ultrasound company.

C. VERASONICS and COMPANY wish to explore a possible business relationship and are willing to enter into this Agreement in order to exchange Confidential Information, as further described below, on the terms and conditions set forth herein. The party disclosing its own Confidential Information is sometimes referred to herein as the "Disclosing Party," and the party receiving the Disclosing Party's Confidential Information is sometimes referred to herein as the "Receiving Party."

D. This Agreement does not require any party to enter into a business relationship that is not mutually acceptable to all parties.

NOW, THEREFORE, in consideration of the terms and conditions stated herein and for other good and valuable consideration, the adequacy of which is acknowledged and agreed by the parties,

### It is Agreed

1. Definitions.

   A. The Disclosing Party's "Confidential Information" is to be construed broadly and includes, but is not limited to, all of the following tangible and intangible assets of the Disclosing Party to the extent that such Confidential Information shall be properly marked as "Confidential" or "Proprietary" : specifications, product designs, nonpublic provisional patent filings and pending patent applications, business and marketing plans, patent and other intellectual property strategies, competitive analysis, research, data and other recorded information, apparatus, markets and customer information, designs, devices, discoveries, drawings, inventions (whether patentable, copyrightable, or otherwise subject of intellectual property protection, and whether or not reduced to practice), know-how, materials and documents, finances, procedures and products, software (including interfaces, object code, source code, firmware and any and all enhancements, related documentation, releases, revisions, and updates thereto), sources of supply, specifications, techniques, texts, trade secrets, specifications, and the like, all whether in preliminary or final form and in and on any media whatsoever, that are created, conceived, reduced to

– 1 –

practice, developed, discovered, invented or made, whether before or during the term of this Agreement which are related to the subjects of this Agreement.

The term "Confidential Information" shall not apply to: (i) information that is already in the possession of the Receiving Party without obligation of confidence; (ii) information which is in the public domain; (iii) information which reasonable proof can establish was in the nondisclosing party's possession prior to the time of disclosure by the other party and was not acquired, directly or indirectly, from the other party; (iv) information which the nondisclosing party receives from a third party on a nonconfidential basis; (v) developments by the nondisclosing party subsequent, to and independent of, the receipt of Confidential Information from the other party and without any use of such Confidential Information of the other party; and (v) information that is ordered to be disclosed by a court of competent jurisdiction, after notice to the party having such information, to be disclosed subject however to any protective terms and conditions that may be contained in any such order.

B.  The Disclosing Party's "Invention" as used herein is to be construed broadly and includes, but is not limited to, concepts, discoveries and ideas, whether patentable or not, including but not limited to computerized business methods, programs, methods, applications, designs, formulas, machines, methods, processes, product ideas or designs, and techniques, as well as improvements thereof or know-how related thereto, relating to any present or prospective business of the Disclosing Party.

2.  <u>Nondisclosure Agreements and Ownership of Confidential Information.</u>

A.  Each party possesses and will continue to possess and develop Confidential Information relating to its business, and such Confidential Information has important commercial value to such party.  A party's Confidential Information, and any and all patents, copyrights and other rights related thereto, are the sole property of such party and/or its assigns.  Any and all Confidential Information of a Disclosing Party that is disclosed to the Receiving Party shall be used by the Receiving Party only for purposes of discussing a potential business relationship between the parties.  Each Receiving Party agrees (1) to keep in confidence and trust all Confidential Information of the Disclosing Party and (2) further agrees neither to use nor to disclose any Confidential Information of the Disclosing Party for any other purpose whatsoever without the prior written consent of the Disclosing Party.  With respect to any and all Confidential Information disclosed by either party on terms of confidentiality prior to its respective execution of this Agreement, all such Confidential Information shall be subject to the terms of this Agreement.

B.  All "Physical Property" (apparatus, documents, equipment, records, and any and all other physical property, whether or not pertaining to Confidential Information) furnished by the Disclosing Party to a Receiving Party and any copies, derivatives, or other materials containing any such Confidential Information made by the Receiving Party shall be and remain the sole property of the Disclosing Party. A Receiving Party agrees to return forthwith to the Disclosing Party all Confidential Information and Physical Property made by the Disclosing Party immediately upon (1) any request by the Disclosing Party or (2) the termination of this Agreement between the parties.  A Receiving Party agrees not to take or retain any Confidential Information or Physical Property of the Disclosing Party, or any copies or reproduction thereof (whether print, electronic, digital, electro-magnetic, or in any other format, means or medium), except as may be expressly permitted in writing by the Disclosing Party after any request by the Disclosing Party to return its Confidential Information or Physical Property.  Notwithstanding the foregoing, a Receiving Party may keep one set of copies of Physical Property subject to this Agreement for legal archival purposes only.

C.  Confidential information furnished by a Disclosing Party may be disclosed by the Receiving Party only to its employees, agents, advisors and representatives who need such information for the purpose of carrying out the above stated purpose; provided, however that any such employee, agent, advisor or representative, shall have executed a written agreement confirming that such person or entity shall

– 2 –

NDA_Verasonics-Alpinion – Nov. 12 2012

comply with the nondisclosure agreements set forth in this Agreement and be bound by the terms and conditions of this Agreement.

D.  Nothing in this Agreement shall constitute any assignment, conveyance, license, or other transfer of any right, title or interest in any of a Disclosing Party's Confidential Information, including any and all intellectual property rights, to the Receiving Party.

3.  <u>Term.</u>

This Agreement shall be effective for two (2) years from the Effective Date and the confidentiality obligations of the Receiving Party hereunder shall survive termination of this Agreement.

4.  <u>Arbitration and Governing Law.</u>

A.  <u>AAA Arbitration and Governing Law.</u>  Subject to section 3.B below, all claims, demands, disputes, controversies, differences or misunderstandings between the parties hereto arising out of or by virtue of this Agreement shall be submitted to and determined by arbitration.  Such arbitration will be held in Seattle, King County, Washington, U.S.A and shall be conducted in accord with the commercial arbitration rules of the American Arbitration Association ("AAA").  The law applied will be the law of the State of Washington without reference to conflicts of laws provisions.  There shall only be one arbitrator appointed pursuant to the rules of the AAA.  The decision of the arbitrator shall be binding upon the parties and shall be final and nonappealable.  The award of the arbitrator shall be made in writing, shall be binding and conclusive on all parties, and shall include a finding for the payment of the costs of such arbitration.  A nonappealable judgment of a court of competent jurisdiction may be entered upon the award of the arbitrator.

B.  <u>Enforcement of this Agreement.</u>  A Receiving Party that breaches this Agreement acknowledges and agrees that any breach of this Agreement will cause irreparable injury to the nonbreaching party, which injury cannot be adequately compensated by monetary damages.  Therefore, in the event of any such breach, the nonbreaching party may obtain without the posting of bond an order for interim relief, including without limitation, a temporary restraining order or other immediate order of immediate equitable or injunctive relief and an order for preliminary injunction or other equitable order from the arbitrator or a court, at the option of the nonbreaching party, and any such order may be filed with any court of competent jurisdiction over the breaching party.  Each party further agrees that any state or federal court situated in Seattle, King County, Washington has and shall have personal jurisdiction over it and proper subject matter jurisdiction, and that venue in any such court is proper venue for enforcement of this Agreement or any award or other order issued by the arbitrator.  Furthermore, the parties agree that these arbitration terms are subject to the New York Convention and are enforceable in any country that is a signatory to the New York Convention.

C.  <u>Attorney Fees and Costs.</u>  The prevailing party in any arbitration or related legal action arising from this Agreement shall be entitled to recover all of its reasonable costs, including without limitation attorney's fees and costs and arbitrator fees.

5.  <u>Limited Effect.</u>

This Agreement does not create any obligation on the parties to enter into a business relationship with each other. This Agreement does not create any obligation on the parties to refrain from entering into a business relationship with any third party. This Agreement does not grant Receiving Party any license or any other rights with respect to the Disclosing Party's proprietary rights or Confidential Information. Neither party shall have the right, power or implied authority to create any obligation or duty, express or implied, on behalf of the other party. Neither party makes any representation with respect to (a) whether the use of any Confidential Information infringes the intellectual property rights of any third parties; or (b) the accuracy or completeness of the Confidential Information.

NDA_Verasonics-Alpinion – Nov. 12 2012

6. Miscellaneous.

A. Governing law. This Agreement shall be interpreted under the laws of the State of Washington, notwithstanding the application of any jurisdiction's choice-of-law rules to the contrary. The parties consent to jurisdiction and venue in the state and federal courts sitting in the State of Washington.

A. Binding Effect. This Agreement shall be binding upon each party and its parents, subsidiaries, and affiliates, successors and assigns, and, if applicable, to personal representative, heirs, and estate, and shall inure to the benefit of the other party and its parents, subsidiaries, and affiliates, successors and assigns, and, if applicable, to personal representative, heirs, and estate.

B. Independent Contractors. Each party is an independent contractor to the other party. This Agreement shall not make either party a partner, agent, or joint venturer of the other party. No party shall be deemed to assume and does not assume any liability or obligation of the other party, except as may be expressly stated in this Agreement.

C. Entire Agreement. This Agreement, including all attachments, constitutes the parties' entire agreement with respect to the subject matter hereof, and supersedes and merges all prior and contemporaneous communications, regarding its specific subject matter. It may not be modified except by subsequent written agreement signed by authorized representatives of both parties.

D. No Collateral Promises. It is understood and agreed that none of the parties or any other representative of the parties has made any promise, representation or warranty whatsoever not contained or referred to herein to induce the signing of this Agreement, and the parties further acknowledge that none of them have signed this agreement in reliance upon any promise, representation or warranty not contained or referred to in this Agreement.

E. Severability; Savings. If any one or more provisions of this Agreement shall be held by any court to be invalid or unenforceable because excessively broad as to scope, duration, activity or subject, such invalidity or unenforceability shall not adversely affect the validity or enforceability of any other part of this Agreement.

F. Construction. This Agreement shall not be construed for or against any party, regardless of its drafter.

G. Notices. All notices under this Agreement shall be deemed given if delivered personally, by registered or certified mail or by other provable means, or by facsimile transmission with confirmation of receipt by telephone, to the parties at the addresses described with the signatures below.

H No Waiver. No waiver of any provision of this Agreement, nor delay in enforcing any rights hereunder, shall be construed as a continuing waiver or create an expectation of non-enforcement of that or any other provision or right.

I. Force Majeure. Time periods for either party's performance under any provisions of this Agreement shall be extended for periods of time during which the party's performance is prevented due to circumstances beyond such party's control, including without limitation, fires, floods, earthquakes, lockouts, strikes, embargoes, governmental regulations, acts of God, acts of terrorism, war or other strife.

J. Headings. Headings in this Agreement are for convenience only and shall not be used to interpret or construe the provisions.

– 4 –

NDA_Verasonics-Alpinion – Nov. 12 2012

K.  Authority.  The parties each represent and warrant that such party has full power and actual authority to enter into this Agreement and to carry out all actions required of them by it.  Each person signing this Agreement in a representative capacity represents and warrants that he or she has full power and authority to bind the party on whose behalf he or she signs.

L.  Counterparts; Facsimile Signatures.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  A facsimile copy of an original signature shall be deemed an original signature.

### AGREED:

**COMPANY**

Signature

Date  Nov. 15, 2012

YOUNGCHEOL  HWANG,  DIRECTOR, CFO

FOR,

Name: Seokbin Ko
Title: President and CEO

Address:

6FL, Verdi Tower 222-22

Guro-Dong, Guro-Gu,
Seoul, 152-848, Korea/.

**VERASONICS, INC.**

Signature

Date  November 12, 2012

Name: Lauren Pflugrath
Title: President and CEO

Address:

22222 NE 62nd Pl.
Redmond, WA 98053

NDA_Verasonics-Alpinion – Nov. 12 2012

# Exhibit C

VERASONICS, INC. AND ALPINION MEDICAL SYSTEMS

ADDENDUM NO. 2 TO
MUTUAL NON-DISCLOSURE AGREEMENT DATED MAY 19, 2010

This **Addendum No. 2** (this "Addendum 2") to the Mutual Non-Disclosure Agreement effective May 19, 2010 (the "Agreement" herein) as previously modified by Addendum 1 effective November 15, 2014 , is effective as of the latest date of signature below (the "Effective Date") by and between Verasonics, Inc., a Washington corporation ("VS"), with its principal offices located at 22222 NE 62nd Pl., Redmond WA 98053, U.S.A., and Alpinion Medical Systems (previously known as VIMED Systems), a Korean corporation with its principal offices located at 6FL, Verdi Tower 222-22, Guro-Dong, Guro-Gu, Seoul, 152-848, Korea. Each of Verasonics, Inc. and Alpinion Medical Systems is sometimes referred to herein as a "Party" and together they are sometimes referred to herein as the "Parties".

**Purpose and Scope**:  The Parties desire to modify the terms and conditions of the Agreement to extend the termination date through December 31, 2019, in accordance with the terms and conditions of this Addendum 2.

NOW, THEREFORE, for and in consideration of the terms and conditions hereinafter set forth and for other good and valuable consideration, the adequacy and sufficiency of which are acknowledged, the Parties hereby agree as follows:

1.  All terms and conditions of the Agreement, except as modified herein, are incorporated herein as restated in full, except that

Item 3. Term shall read:

"This Agreement shall be effective through December 31, 2019 and the confidentiality obligations of the Receiving Party hereunder shall survive termination of this Agreement."

All the other terms and conditions of the Agreement shall remain in place.

2.  This Addendum 2 may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one (1) and the same instrument.  A facsimile copy of a counterpart original signature shall be deemed to be an original and shall have the same effect and validity as an original signature.  An electronic copy or image of a counterpart original signature shall also be deemed to be an original with the same effect and validity of an original signature.

**ACCEPTED AND AGREED:**

**VERASONICS INC.**

Dated: July 2, 2014
Name:
Title:

**ALPINION MEDICAL SYSTEMS**

Dated: July 14th. 2014
Name:
Title: